

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00423-CR

JACKY LEE PAYNE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 27,393B, Honorable John B. Board, Presiding

August 7, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following a plea of not guilty, appellant Jacky Lee Payne was convicted of aggravated assault with a deadly weapon,[1] enhanced by one prior felony. The trial court sentenced appellant to life imprisonment.[2] In presenting this appeal, counsel has filed an

---

[1] TEX. PENAL CODE ANN. § 22.02 (West 2018).

[2] Appellant was convicted of a second-degree felony. The punishment range was enhanced to that of a first-degree felony by virtue of appellant's prior commission of a felony offense. TEX. PENAL CODE ANN. § 12.42(b) (West 2018).

*Anders*[3] brief in support of a motion to withdraw. We will grant counsel's motion to withdraw and affirm the judgment of the trial court.

In May 2017, appellant was charged by indictment with aggravated assault with a deadly weapon. He subsequently waived his right to trial by jury, pled not guilty, and proceeded to a bench trial. At that unified proceeding, the court also heard a second charge against appellant for injury to a child or elderly person with intent to cause bodily injury, also enhanced. Appellant pled "true" to the enhancement paragraph in each case and stipulated to several convictions including the conviction described in the enhancement paragraph of each indictment.

The victim of both the alleged offenses was appellant's 78-year-old father. Appellant's father and his mother testified to the occasions during 2017 on which appellant accosted his father at his parents' home. On the first occasion, in early 2017, appellant came to his parents' home to receive funds from his disability payment.[4] Appellant was angry and damaged his parents' front door. When his father came outside, appellant pulled from his belt what the father described as a butcher knife with a 9-to-12 inch blade. Appellant yelled and "lunged" at his father, threatening to kill him. His father said he was afraid, grabbed appellant's bicycle to protect himself and then "kind of

---

[3] *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[4] The record shows appellant's parents were the designated payees of appellant's benefits. Payments were deposited into an account they maintained, and they delivered cash to appellant as needed. There are indications that appellant had suffered from depression and some suicidal thoughts, had some medical issues and was severely dyslexic. He was unable to read, write or maintain employment. However, it appears from the record trial counsel was aware of all these things but considered appellant to be competent. Counsel chose not to raise those issues and, as appellate counsel notes, we cannot on this record say trial counsel was ineffective for failing to do so.

2

throwed it at him and then I reached for my cell phone to call the police and he left." Appellant's mother's description of the events was similar. A neighbor, a Randall County deputy sheriff, also testified to his observations when the father came to him after the assault. The deputy told the court the father told him appellant "threated to kill him with a knife."[5]

The father also testified about an event seven months later in which appellant came to the home, grabbed him by the neck and threw him from the front porch to the ground. The father sustained some scratches to his forehead, nose and lip. But, he said, he "had no pain" from those injuries. Appellant's mother testified to her observations, describing appellant as looking "mad and actually mean." A witness who worked close by also testified to his observations that day. He heard yelling and saw appellant hitting an elderly man. He came over and restrained appellant.

There was evidence appellant's conduct had in the past led his parents to "get trespass warnings to keep [appellant] away from" their home. The father testified to other instances on which appellant threatened him. He told the court of an occasion when he and his wife brought groceries to appellant's house. Appellant threw the groceries on the floor, was "screaming and hollering" and retrieved the "same knife" from his bedroom. Appellant told the father he "was going to kill" him. Appellant's mother testified to the same events. She also told the court of an occasion in 2016 on which appellant threatened to kill her.

---

[5] Counsel's hearsay objection was overruled, the court finding the statement an excited utterance.

Appellant's mother also testified appellant twice had attacked his older brother, once with a beer bottle, when he and the brother lived together in 2012-2013. The brother went to the hospital on both occasions. Appellant's sister testified that growing up with appellant was "not fun" and he was "[m]ean, angry, disrupted everything as long as I can remember." She also told the court that appellant sexually assaulted her three times when she was in sixth grade. Appellant's ex-girlfriend testified to his domestic abuse of her. Another ex-girlfriend testified to several incidents of domestic abuse in 1988. She also testified appellant held her in a house against her will, and stabbed her with a knife when she tried to escape. She sustained serious injuries. Appellant was convicted and sentenced to a period of time in prison for this offense. The ex-girlfriend also told the court that appellant set a fire at an apartment complex, pulled a gun and beat up the complex manager, breaking the manager's arm. When asked whether she was still scared of appellant, she said, "Absolutely. He's crazy."

Appellant chose not to testify.

At the conclusion of the evidence, the trial court found appellant not guilty of the injury to a child or elderly person charge, noting the father described no bodily injury. He found appellant guilty of aggravated assault with a deadly weapon, found the enhancement paragraph to be "true," and entered an affirmative deadly weapon finding. The trial court assessed punishment at life imprisonment.

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, it reflects no potentially plausible basis for reversal of appellant's conviction. *Anders,* 386 U.S. at 744-45; *In re*

4

*Schulman*, 252 S.W.3d 403, 406 (Tex. Crim. App. 2008). Counsel candidly discusses why, under the controlling authorities, the record supports that conclusion. *See High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978). Counsel has demonstrated that he has complied with the requirements of *Anders* by: (1) providing a copy of the brief and appellate record to appellant, (2) notifying him of the right to file a *pro se* response if he desired to do so, and (3) informing him of the right to file a *pro se* petition for discretionary review. *Kelly v. State,* 436 S.W.3d 313, 319 (Tex. Crim. App. 2014); *In re Schulman*, 252 S.W.3d at 408. By letter, this Court also notified appellant of his opportunity to submit a response to the *Anders* brief and motion to withdraw filed by counsel. Appellant has not filed a response.

In conformity with the standards set out by the United States Supreme Court, we do not rule on counsel's motion to withdraw until we have independently examined the record. *Nichols v. State*, 954 S.W.2d 83, 86 (Tex. App.—San Antonio 1997, no pet.). If this Court determines the appeal arguably has merit, we remand it to the trial court for appointment of new counsel. *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App.1991).

By his *Anders* brief, counsel raises several grounds that could possibly support an appeal but explains why he concludes none show arguably reversible error. He concludes the appeal is frivolous. We have reviewed each ground raised by counsel and made an independent review of the entire record to determine whether there are any arguable grounds which might support an appeal. *See Penson v. Ohio*, 488 U.S. 75 (1988); *Bledsoe v. State*, 178 S.W.3d 824 (Tex. Crim. App. 2005). We have found no

arguable grounds supporting a claim of reversible error and agree with counsel that the appeal is frivolous.

Accordingly, we grant counsel's motion to withdraw[6] and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

---

[6] Counsel shall, within five days after this opinion is issued, send appellant a copy of the opinion and judgment, along with notification of his right to file a *pro se* petition for discretionary review. TEX. R. APP. P. 48.4.